

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Dr. C. D. Simmons, Comptroller
University of Texas
Austin, Texas

Dear Sir:

Opinion Number O-5696
Re: 1. Disposition of proceeds of
Insurance policies on University
buildings.
2. Appropriation of such funds
for repairs and improvements to
buildings damaged.
3. Whether power to make contracts
for repairs and improvements at
Medical School may be delegated to
Sealy & Smith Foundation in order
to permit the Foundation to defray
part of the cost thereof.

Your letter of October 25th is, in part, as follows:

"The Board of Regents of The University of Texas
has requested me to submit to you for an opinion
the following inquiry:

"The buildings of the John Sealy Hospital at
Galveston were damaged by the Gulf storm of July
27, 1943. On certain of these buildings the Board
of Regents of The University of Texas carried wind-
storm insurance in the total sum of $55,000.00, the
premiums on such policies being paid out of the Hos-
pital's receipts from revenue patients. The amount
of insurance by reason of the damage which the Board
will be able to collect has not yet been determined;
however, it seems certain that it will not be able
to collect the full amount of each policy. It is

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

necessary to make or have made immediately re-
pairs to these buildings which were damaged in
order that said buildings may be made usable for
purposes of carrying on the business of the John
Sealy Hospital.

"The estimated cost of these repairs on the
Hospital buildings amounts to the sum of $78,500.
The estimated amount of insurance for the damages
suffered by these buildings that may be collect-
ible is not more than $18,000.00.

"The Sealy and Smith Foundation for the John
Sealy Hospital, which is a charitable corpora-
tion organized under the laws of the State of
Texas, has submitted a proposal to the Board of
Regents to arrange for the necessary repairs to
the Hospital buildings, paying out of its own
funds the total cost thereof, provided the Regents
agree to allocate and pay over to the Foundation
proceeds of damage claims collected under policies
of insurance carried on the Hospital buildings.
In other words, the Foundation will furnish and
advance the necessary funds, which, when added
to said insurance, would be sufficient to pay the
expenses of the repairs to the buildings. The
Foundation is to select the contractor and make
the contract for the construction and repair of
said buildings and supervise the work, consulting
with the University architect and the Dean of the
Medical Branch. The Foundation will not advertise
for bids for this construction, but proposes to
select a competent contractor, advising the Board
of Regents before finally closing any such contract.

*   *   *   *   *

"In connection with the foregoing proposal,
several legal questions have been raised upon
which the Regents desire your advice. These ques-
tions are as follows:

Dr. C. D. Simmons, page #3

"1. Should the proceeds collected by the
Board of Regents of The University of
Texas upon the windstorm insurance
policies covering the buildings at the
John Sealy Hospital be deposited in
the institution's local funds bank de-
pository account or in the State Treas-
ury?

"2. May the proceeds so collected on said
windstorm insurance policies be used
and expended by the Board of Regents in
making repairs and improvements on build-
ings at the John Sealy Hospital in Gal-
veston and, if so, what is the proper
procedure therefor?

"3. Can the Board of Regents legally accept
the proposal made by The Sealy and Smith
Foundation for the John Sealy Hospital
to repair said Hospital buildings under
the arrangement described above and pay
over to the Foundation upon the comple-
tion of the repairs the proceeds of the
said insurance policies?"

1.

Article 2584, Revised Statutes, 1925, provides that
"The State Treasurer shall be the treasurer of the University
of Texas." In view of its provisions the Attorney General in
1931 held that all moneys and funds collected on behalf of the
University were required to be deposited with the State Treas-
urer, and that officials of the school could not legally retain
such funds or deposit the same with selected banks, subject to
their control. (Conference Opinion No. 2586). In 1933, the
Legislature enacted a statute which is partially in conflict
with, and to that extent is an exception to Article 2584; the
pertinent provisions of this later statute (Chap. 221, Acts
43rd Legislature; Art. 2654d, Vernon's Ann. Civ. Statutes)
are:

"Sec. 1. The governing boards of the * * *
University of Texas, including all branches of
the University * * * may retain control respec-
tively of the following sums of money collected
at each of said several institutions in carry-
ing out the functions of an educational institu-
tion, such as funds collected from student fees
of all kinds; charges for use of rooms and dor-
mitories; receipts from meals, cafes and cafe-
terias; fees on deposit refundable to students
under certain conditions; receipts from school
athletic activities; income from student publi-
cations or other student activities; receipts
from sale of publication products and miscel-
laneous supplies and equipment; students' volun-
tary deposits of money with said schools for safe-
keeping; all other fees and local institutional
income of a strictly local nature arising out of
and by virtue of the educational activities, or
research or demonstration carried on by each and
all of said several schools.

"Sec. 2. The governing boards of the respec-
tive institutions named in Section One above are
authorized to select depository banks as places
of deposit of all funds of the kind and character
named in Section One, * * *.

"Sec. 5. * * * All income to the Available
University Fund shall be deposited with the State
Treasurer within five days after receipt thereof
by any State officer, agent or employee and shall
be expended in accordance with Chapter 42, General
Laws, Regular Session, Forty-second Legislature,
1931.

"Sec. 6. The provisions of this Act shall apply
only to the funds hereinabove specifically enumer-
ated and other local institutional income or dona-
tions or gifts to said schools."

The funds in question are the proceeds of insurance policies taken out by the Board of Regents in obedience to legislative directive (S. C. R. #3, Gen. Laws, 2nd C. S., 37th Leg.) for the protection of the State's interest in certain buildings at the Medical School, and are in partial recoupment of losses sustained thereto. Since under the Constitution of Texas (Art. VII, Secs. 11 and 14) the University Available Fund alone of the several State funds may be used for the construction and erection of buildings at the University of Texas, it is our opinion that it is that Fund for the benefit of which insurance is maintained on such buildings, and that moneys received under such policies because of damage to or destruction of such buildings properly should be credited to the University Available Fund.

It is not necessary to determine whether such funds are "income" within the meaning of Chapter 221, supra; if they are so considered, then under the express provisions of Section 5 of that Act, the funds must be deposited with the State Treasurer. If they are not so regarded, then the funds are not within the exceptions contained in Chapter 221, supra, and under Article 2544 are required to be deposited with the State Treasurer.

2.

After making certain specific appropriations from the University Available Fund, the 48th Legislature (Senate Bill 333, Chap. 399) provided that —

"The residue of said Available Fund, if any, may be expended for permanent improvements, equipment, instructional services, repairs and physical plant operation and maintenance or may be expended as additional payment on the principal of the original Four Million Dollar ($4,000,000.00) indebtedness." (Emphasis ours).

Subject to the specific appropriations which by Chapter 490, Acts 48th Legislature, are made prior charges against the Available University Fund, the moneys of said Fund, under express authority of that Act, may be expended for repairs upon and improvements to buildings of the John Sealy Hospital, as part of the Medical School of the University of Texas.

As above stated, it is our opinion that proceeds of insurance policies on such buildings belong to the Available Fund, and, in consequence, may be expended for the purposes for which the Available Fund is appropriated.

Procedure for letting contracts by the Board of Regents for construction and erection of University buildings is the subject of Article 2593, Revised Statutes, 1925; that statute reads:

- "All contracts, with architects, plan makers, landscapers, or draftsmen, or with any other person, firm or corporation of whatever name or designation shall be absolutely void unless same be approved by the signed written vote of a majority of said Board of Regents in regular or called meeting assembled, and provided further that all contracts for the construction or erection of such permanent improvements shall be absolutely void unless same are made after receiving sealed competitive bids after advertisement therefor by the president of the Board of Regents, for four consecutive weeks in one or more newspapers of general circulation in the State of Texas, and said bids considered and awards made to the lowest responsible bidder by the signed written vote of a majority of said Board of Regents, in a regular or called meeting assembled. Said bids and awards shall be made only after such publication."

You are advised that contracts for construction of improvements and for the making of repairs to existing buildings are within the quoted statute, and must be let in accordance therewith. The phrase "contracts for the construction * * * of * * * permanent improvements", used in Article 2593, embraces contracts for the alteration and repair of existing buildings, and contracts for construction of improvements and additions to existing buildings, as well as for erection of new structures. Bell v. Lightfoot, 164 Tex. 346, 138 S. W. 381; In re Fowler, 53 N. Y. 60.

### 3.

May the Board of Regents enter into an agreement with Sealy and Smith Foundation whereby the foundation will select the contractor for the construction and repair work to be done, make the contract without advertising for bids, and whereby the Foundation will pay the contractor for the making of such repairs and improvements, but with the understanding that the Board will reimburse the Foundation for costs so incurred, to the extent that the proceeds of the insurance policies will do so? In our opinion, they may not, regardless of the fact that the procedure is suggested as the means whereby the Foundation will pay the cost of the repairs and improvements which is in excess of the amounts received under the insurance contracts carried by the State upon the damaged buildings. Although the suggested arrangement obviously contemplates that most of the funds which are to be expended are private funds which are proposed to be used for public benefit, yet it is apparent that the proposal contemplates also the expenditure of public funds in the construction of improvements and the making of repairs to the buildings at the Medical School. The Legislature has delegated to the Board of Regents of the University the power to make the contracts on behalf of the State for the construction and erection of such buildings, and the making of repairs and improvements thereto; but by the same statute granting the power, has limited the manner of its exercise. (Article 2593, above quoted). To permit the expenditure of public funds for such purposes, the contracts therefor

must be made by the officer or body empowered to act for the State, and substantially in the manner prescribed by law for the exercise of that power. The rule is stated in Texas Jurisprudence (34 Tex. Juris. 455, sec. 74) as follows:

> "To be valid and binding, a public contract must be made in behalf of the government by an officer or body authorized to represent the State or the political subdivision thereof in whose behalf it is made, and in the manner and with the formalities prescribed by law."

We think the proposal under consideration conflicts with both of the principles embodied in the quoted statement; in the first instance, because the contract for construction and repair is proposed to be made, not by the Board of Regents, but by the Foundation; and in the second, because it is proposed that no advertisement for bids shall be made, but that the contract shall be let without such formality.

The authority given to the Board of Regents in the matter of making contracts for the construction of buildings in its very nature involves the exercise of wide discretion and judgment; such being the nature of the agency, the power conferred may not be delegated. Horne Zoological Arena Co. v. City of Dallas, (Tex. Civ. App.) 45 S. W. (2) 714, 715; Gano v. Palo Pinto County, 71 Tex. 99, 8 S. W. 634; Naill v. State, 59 Tex. Cr. 484, 486, 120 S. W. 630, Ann. Cas. 1912A, 1258; 34 Tex. Juris. p. 457, sec. 70. As the rule is stated in Meecham, Public Offices and Officers, (sec. 566, p. 368):

> "In those cases in which the proper execution of the office requires, on the part of the officer, the exercise of judgment or discretion, the presumption is that he was chosen because he was deemed fit and competent to exercise that judgment and discretion, and, unless power to substitute another in his place has been given to him, he cannot delegate his duties to another."

For these reasons, we answer your third inquiry in the negative.

APPROVED NOV 8 1943

FIRST ASSISTANT
ATTORNEY GENERAL

GK-s

OK
TBR

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Gaynor Kendall
Gaynor Kendall
Assistant



APPROVED
OPINION
COMMITTEE
BY Burt
CHAIRMAN